Vito de la Cruz, WSBA #20797
Bryan G. Smith, WSBA # 29382
Sergio Garcidueñas-Sease, WSBA # 46958
TAMAKI LAW OFFICES
1340 N. 16th Ave., Ste. C
Yakima, WA 98902
Ph.   509-248-8338
Fax: 509-452-4228
vito@tamakilaw.com
bsmith@tamakilaw.com
sergio@tamakilaw.com
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| Richard L. Mathieu, as Personal Representative of the Estate of C.R., and Maria Guadalupe Alvarado-Mendieta, individually and as parent of minor child C.R., and Abraham Ramirez, individually and as parent of minor child, C.R.,<br><br>                              Plaintiffs,<br>v.<br><br>The United States of America, Yakima Valley Farm Worker's Clinic d/b/a Lincoln Avenue Medical Center, Stephanie Persondek, M.D., Yakima Valley Memorial Hospital Association d/b/a Virginia Mason Memorial, OBHG Washington, P.C., d/b/a OB Hospitalist Group, James Cahill, M.D., Pediatrix Medical Group of Washington, Inc., P.S., Elizabeth Engelhardt, M.D., and John Does 1-5,<br>                              Defendants. | NO.:<br><br>COMPLAINT FOR DAMAGES<br><br>JURY TRIAL DEMANDED<br><br>☐ Electing Voluntary Arbitration<br><br>☒ Declining Voluntary Arbitration |

COMPLAINT FOR DAMAGES - 1

Tamaki Law Offices
1340 N. 16th Ave., Ste. C
Yakima WA 98902
509-248-8338

PLAINTIFFS, by and through counsel, Vito de la Cruz of Tamaki Law Offices, hereby file this complaint for damages against Defendant, the United States of America, pursuant to the Federal Tort Claim Act (FTCA) 28 U.S.C. §2671, et seq. Plaintiffs also bring state law causes of action against Defendants Yakima Valley Memorial Hospital Association d/b/a Virginia Mason Memorial formally known as Yakima Valley Memorial Hospital ("VMM") and/or its staff, James Cahill, M.D., and/or his employer, OBHG Washington, P.C., d/b/a OB Hospitalist Group, ("OB Hospitalist Group") Elizabeth Engelhardt, M.D., and/or her employer, Pediatrix Medical Group of Washington, Inc., P.S., Stephanie Persondek, M.D., Yakima Valley Farm Worker's Clinic d/b/a Lincoln Avenue Medical Center, ("YVFWC") and John Does 1-5 pursuant to 28 U.S.C. § 1367(a). Plaintiffs hereby allege as follows:

## I.     INTRODUCTION

1.1     Pregnant with twins, Plaintiff Maria Guadalupe Alvarado-Mendieta (Maria Alvarado) received medical care from Defendant Stephanie Persondek, M.D., an employee of the Yakima Valley Farm Worker's Clinic, a federally-funded medical clinic subject to the provisions of the Federal Tort Claims Act, 28 U.S.C. §2675(a). During the labor and delivery of Plaintiff's twin boys, Dr. Persondek provided substandard and inadequate medical care resulting in catastrophic physical and neurological injuries to C.R. These injuries were preventable and would not have

occurred but for Dr. Persondek's negligence, as well as the negligence of the Co-Defendants named herein.

1.2     This case also involves substandard medical care provided by VMM, its nursing staff, James Cahill, M.D., and his employer, OB Hospitalists Group, and Elizabeth Engelhardt, M.D., and her employer, Pediatix Medical Group of Washington, Inc., P.S.

## II.     PARTIES, JURISDICTON, AND VENUE

2.1     Plaintiff Maria Alvarado, at all relevant times, was an adult patient of Defendants. She was Plaintiff C.R.'s mother. Plaintiff C.R., at all relevant times, was a patient of Defendants named above.

2.2     Richard Mathieu is the duly appointed personal representative of the Estate of C.R. Mr. Mathieu served as litigation guardian for C.R., before C.R.'s death on December 21, 2017.

2.3     Plaintiff Abraham Ramirez, at all relevant times, was Plaintiff C.R.'s father.

2.4     Stephanie Persondek, M.D., was at all times, a physician licensed in the state of Washington, providing care to Plaintiffs. At all relevant times, Defendant Persondek was an employee and agent of Defendant Yakima Valley Farmworkers Clinic.

2.5    Defendant Yakima Valley Farm Worker's Clinic d/b/a Lincoln Avenue Medical Center (YVFWC), was and is at all relevant times, a federally funded medical clinic providing medical care in Eastern Washington.

2.6    Defendant, the United States of America, under the Federal Tort Claims Act (FTCA) is a body politic which for purposes of this litigation operates through its executive branch an agency of government known as the Department of Health and Human Services (HHS) and is charged with defending claims brought against federally funded medical clinics such as Defendant YVFWC. 28 U.S.C. § 2671, et seq., as well as employees and agents of said clinic.

2.7    Defendant James Cahill, M.D., was at all relevant times a physician licensed in the State of Washington, providing care to Plaintiffs and employed by OB Hospitalist Group.

2.8    Defendant Elizabeth Engelhardt, M.D., was at all relevant times, a physician in the State of Washington, providing care to Plaintiffs and employed by Defendant Pediatrix Medical Group of Washington, Inc., P.S.

2.9    Defendant Yakima Valley Memorial Hospital Association d/b/a Virginia Mason Memorial formally known as Yakima Valley Memorial Hospital ("VMM") is a nonprofit corporation which provided health care services to Plaintiffs in Yakima County, and whose agents and employees, acting on behalf of the hospital and within

the scope of their agency or employment, contributed to Plaintiffs' injuries and damages as hereinafter alleged.

2.10    Pursuant to 28 U.S.C. § 1331 and the FTCA, 28 U.S.C. §2671, et seq., this Court has jurisdiction over the claims alleged against the United States.

2.11    This Court has jurisdiction over the non-FTCA claims alleged against Defendants Dr. Cahill, OB Hospitalist Group, Dr. Engelhardt, Pediatrix Medical Group, Inc., P.S., and VMM and its hospital staff pursuant to 28 U.S.C. § 1367(a) (supplemental jurisdiction).

2.12    Since the acts, omissions and damages alleged herein occurred in Yakima County, venue is proper in the Federal District Court for the Eastern District of Washington pursuant to 28 U.S.C. §1402.

2.13    Plaintiffs filed a FTCA claim form on August 29, 2017. More than six months have elapsed since Plaintiffs filed their FTCA claim forms.

### III.    DATE OF OCCURRENCE

3.1    Plaintiff Maria Alvarado was admitted for delivery of her twin sons on April 22, 2016. C.R. was delivered at VMM in the early morning hours of April 23, 2016. Therefore, within two years of the commencement of this action, the Plaintiffs suffered injuries and damages as hereinafter alleged in Yakima County, Washington.

COMPLAINT FOR DAMAGES - 5

## IV.   STATEMENT OF FACTS

4.1   On or about April 22, 2016, Plaintiff Maria Alvarado was pregnant with twin boys. Plaintiff Abraham Ramirez was the father of the twin boys.

4.2   Plaintiff Maria Alvarado's pregnancy was considered high risk because it involved discordant twins with concern for the growth of the smaller of the two twins.

4.3   Plaintiff Maria Alvarado's twins were dichorionic and diamniotic, which means that each fetus was encased in his own amniotic sack and each had its own placenta.

4.4   Plaintiff Maria Alvarado sought and received prenatal medical care at the Defendant YVFWC located in Yakima, Washington.

4.5   On April 22, 2016, Defendant Stephanie Persondek, M.D., was a doctor licensed to provide medical care in the State of Washington and was an employee, agent, apparent agent, servant and/or representative of the Defendant YVFWC and, thus, of the United States pursuant to FTCA, 28 U.S.C. §2671, et seq.

4.6   Defendant Dr. Persondek, as an employee, agent, apparent agent, servant and/or representative of Defendant YVFWC, was Plaintiff Maria Alvarado's physician providing her prenatal and delivery medical care.

4.7   Defendant James Cahill, M.D., was a doctor licensed to provide medical care in the State of Washington. He was an employee, agent, apparent agent, servant

and/or representative of the Defendant OB Hospitalist Group who was called to provide a medical assessment for the need to deliver C.R., by C-Section.

4.8    By April 22, 2017, ultrasound measurements had revealed that Plaintiff Maria Alvarado's twins exhibited birth weight discordance where one twin was significantly larger than the other.

4.9    Defendant Dr. Persondek, after consultation with other physicians, decided to induce Plaintiff Maria Alvarado's labor and as such directed that she be admitted to Defendant VMM for labor and delivery.

4.10    Plaintiff Maria Alvarado was admitted into Defendant VMM in the afternoon of April 22, 2017. Plaintiff Abraham Ramirez was present with Plaintiff Maria Alvarado. The membranes for Baby A were ruptured at approximately 7:02 p.m. and she began to labor.

4.11    At approximately 11:15 p.m., Plaintiff Maria Alvarado began pushing strenuously. She pushed for one hour and thirty-seven minutes until 12:52 a.m. on April 23, 2016, when she vaginally delivered Baby A, the smaller of her twins.

4.12    Baby A weighed 4 pounds and 7 ounces at birth.

4.13    Despite Baby A's small size, Plaintiff Maria Alvarado suffered several lacerations of her perineum raising a concern regarding her ability to vaginally deliver C.R., who was estimated to be 40% larger than Baby A.

4.14  At approximately 1:04 a.m., on April 23, 2016, Defendant Dr. Persondek or someone at her direction ruptured the membranes for C.R., but did not place a scalp monitor on him.

4.15  In addition to not placing a scalp monitor on C.R., medical personnel did not place a monitor on Plaintiff Maria Alvarado to monitor her contractions.

4.16  Beginning at approximately 1:04 a.m., when the membranes to C.R.'s amniotic sac were ruptured, his fetal heart tracing was non-reassuring.

4.17  From 1:04 a.m. until 2:42 a.m., on April 23, 2016, Defendant Dr. Persondek did not take Plaintiff Maria Alvarado to surgery to deliver C.R. by Cesarean section despite the non-reassuring fetal heart tracings.

4.18  At 1:24 a.m. on April 23, 2016, Defendant Dr. Cahill was reported to be at Plaintiff's Maria Alvarado's bedside "assessing the need for C-Section."

4.19  According to medical notations, Defendants Dr. Cahill and Dr. Persondek discussed the options of a C-section, but decided not to proceed to surgery.

4.20  At 1:37 a.m., Defendants Dr. Cahill and/or Dr. Persondek decided to apply a vacuum to attempt to extract C.R., in lieu of proceeding to a C-section.

4.21  When the vacuum was applied, the vertex of C.R. was unengaged at -2 station which constituted a breach of the standard of care.

4.22  Defendants Dr. Cahill and/or Dr. Persondek applied the first vacuum at 1:37 a.m., but were unable to extract C.R. or effect much movement down the birth canal.

4.23  A second vacuum was applied at 1:46 a.m., but again the procedure was unsuccessful in delivering C.R.

4.24  At approximately 1:50 a.m., 58 minutes after the delivery of Baby A, Plaintiff Maria Alvarado declared that she could not push any longer.  Even though the fetal heart tracing remained non-reassuring and there was still no uterine monitor placed to monitor her contractions, she was given a 10-15-minute break and made to push once again.

4.25  At approximately 2:24 a.m. on April 23, 2016, Defendant Dr. Persondek discussed the option of a C-section with Plaintiffs.

4.26  At approximately 2:30 a.m., Defendant Dr. Persondek secured written consent from Plaintiff to deliver Baby C.R. by C-section.

4.27  From 2:30 until 2:52 a.m., Defendants did not request monitors to be placed on Plaintiff Maria Alvarado to monitor her contractions or to monitor C.R.'s fetal heart tracings.

4.28  At approximately 2:46 a.m., Plaintiff Maria Alvarado was prepped for surgery and C.R. was delivered by C-Section at 2:52 a.m., two hours after Baby A was delivered vaginally.

4.29 Between 1:04 a.m. and 2:46 a.m. on April 23, 2016, Defendants Dr. Persondek and/or Dr. Cahill failed to act with urgency regarding delivering C.R. even though each minute that passed increased the risk of adverse outcomes for both C.R. and Plaintiff Maria Alvarado.

4.30 C.R. was born severely acidotic with a birth weight of 6 pounds and 8 ounces, was "blue" and flaccid with Apgar scores of 1 and 1. He subsequently developed seizures shortly after birth.

4.31 After C.R. was delivered, Defendant Dr. Engelhardt was in charge of intubating him. Defendant Dr. Engelhardt was unsuccessful in at least two attempts to intubate C.R. which contributed to his increasing risk of suffering neurological deficits. Defendant Dr. Engelhardt's failed attempts to intubate fell below the standard of care.

4.32 Baby C.R. was ultimately airlifted to Seattle Children's hospital for treatment of his encephalopathy, seizures, and other deficits. He endured seizures, and was partially or completely blind and deaf. His eyes deviated to the right. He was diagnosed with encephalopathy secondary to the hypoxic-ischemic injury that he suffered as a result of the delay in delivery. He also had repeated emergency admissions to Seattle Children's Hospital. He lacked a swallow reflex which necessitated inserting a gastric feeding tube for nourishment.

4.33  On December 21, 2017, C.R. died from complications of his neurological and other medical deficits, which were proximately caused by breaches in the standard of care required of the Defendants herein.

4.34  During the unnecessarily prolonged labor, Plaintiff Maria Alvarado suffered a placental abruption which increased the risk of injury to her and to C.R.

4.35  During the unnecessarily prolonged labor, Plaintiffs were not fully informed by Defendants herein about the significance of the non-reassuring fetal heart tracings or the risks posed to Baby C.R. by continuing to pursue a vaginal delivery.

V. **CAUSES OF ACTION – NEGLIGENCE – WRONGFUL DEATH PURSUANT TO RCW 4.20 ET. SEQ. AND RCW 4.24.010**

5.1  Plaintiffs incorporate the allegations enumerated above as if fully set forth herein.

5.2  Defendants, by and through their agents, apparent agents, employees, servants, representatives, and contractors had a duty to exercise the degree of care, skill, and learning expected of a reasonably prudent health care provider, acting in the same or similar circumstances, when providing care to the Plaintiff Maria Alvarado and her child, C.R.

5.3  Defendants breached the aforementioned duty by engaging in the following acts or omissions, as follows:

5.3.1   By failing to possess the requisite knowledge appropriate to practice obstetrics and neonatology;

5.3.2   By failing to possess the requisite knowledge regarding appropriate measures to take in connection with Plaintiff Maria Alvarado's and C.R.'s care;

5.3.3   By failing to perform appropriate physical or diagnostic tests, or to order that such examinations be performed;

5.3.4   By failing to timely deliver C.R. by cesarean section when it was medically required to do so;

5.3.5   By failing to follow appropriate guidelines concerning care and supervision of a woman in labor with twins;

5.3.6   By failing to follow appropriate guidelines concerning care and supervision of an unborn child who is exhibiting signs of potential fetal distress during labor, including but not limited to non-reassuring fetal heart tracings, acidosis, a wandering fetal heart baseline, and an agonal heart rate;

5.3.7   By failing to adequately warn Plaintiff Maria Alvarado of the danger of C.R.'s condition when he was showing signs of fetal distress during labor;

5.3.8   By failing to examine and/or monitor Plaintiff Maria Alvarado and her unborn child to ensure that C.R. would not be medically compromised or injured;

5.3.9   By failing to provide adequate care to Plaintiff Maria Alvarado and her unborn child, C.R.;

      5.3.10    By failing to consult with other physicians or health care providers regarding the care and treatment rendered to Plaintiff Maria Alvarado and her unborn child, C.R.

      5.3.11    By failing to use reasonable care in the management of Plaintiff Maria Alvarado's labor and delivery of C.R.;

      5.3.12    By failing to prescribe, order, and/or perform diagnostic procedures that would have revealed C.R.'s true condition and dictated a different course of care and treatment for him;

      5.3.13    By failing to request consultation with appropriate medical specialists who would have prescribed, ordered, and/or performed procedures such as a timely cesarean section to prevent fetal distress, oxygen deprivation, and physical damage to C.R.;

      5.3.14    By failing to properly diagnose, treat and monitor, Plaintiff Maria Alvarado's condition and that of her unborn child, C.R.; and,

      5.3.15    By failing to interpret the risk factors presented including but not limited to: (a) the birth weight discordance between the twins; (b) Plaintiff Maria Alvarado's small size; (3) Plaintiff Maria Alvarado's strenuous and prolonged labor and difficult vaginal delivery of the smaller of the two unborn twins; (4) the serious perineum lacerations endured by Plaintiff Maria Alvarado during the vaginal delivery of the smaller of the twins; (5) the -2 station and transverse position of C.R.; (6) the

non-reassuring fetal monitoring strips; (7) the Plaintiff Maria Alvarado's almost constant contractions caused by the increased administration of Pitocin and their effects on Baby C.R.; (8) the failure of the two vacuum extraction attempts which were contraindicated when the vertex of C.R. was at -2 station and transverse; (9) the inordinate delay of almost two hours between the vaginal delivery of Baby A and the cesarean section delivery of C.R., especially in light of the risk factors enumerated here.

5.4   As a direct and proximate result of defendants' negligent acts and omissions set forth above, C.R. suffered bodily injury, pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalizations, medical and nursing care and treatment, loss of earnings, loss of ability to earn money and, ultimately, death.

5.5   The Estate of C.R. is entitled to damages pursuant to RCW 4.20.046 and RCW 4.20.060, including but not limited to pre-death pain and suffering, emotional distress, and all other such damages he suffered while he was alive, in addition to net future earnings.

5.6   As a direct and proximate result of defendants' negligent acts and omissions set forth above, Plaintiffs Maria Alvarado and Abraham Ramirez have suffered and will continue to suffer mental anguish and the loss of services, companionship, comfort, society, and attentions of their child. In addition, they

have incurred medical and injury-related expenses for the care and treatment of their child, C.R.

## VI.  PRAYER FOR RELIEF

6.1  Wherefore, Plaintiffs request judgment against defendants for:

6.1.1 Economic and non-economic damages in an amount to be determined at trial;

6.1.2 Statutory costs and attorney's fees;

6.1.3 Interest as allowed by law;

6.1.4 Such other and further relief as this court deems just and proper.

DATED this 25th day of May 2018.

**TAMAKI LAW OFFICES**
**Attorney for Plaintiffs**

By: /s/ Vito de la Cruz
Vito de la Cruz, WSBA No. 20797
1340 N. 16th Ave., Ste. C
Yakima, WA 98902
Ph.:509-248-8338
Fax:509-452-4228
vito@tamakilaw.com

COMPLAINT FOR DAMAGES - 15

**Tamaki Law Offices**
1340 N. 16th Ave., Ste. C
Yakima WA 98902
509-248-8338

## DECLARATION OF VITO DE LA CRUZ REGARDING VOLUNTARY ARBITRATION

VITO DE LA CRUZ declare subject to perjury under the laws of the State of Washington the following:

1. I am an attorney representing the Plaintiffs in the above-entitled medical negligence action.

2. I provided Plaintiffs with a copy of the provisions of the Voluntary Arbitration Act of RCW 7.70A.020 et. seq., before commencing this action and they have determined that they do not elect to submit this matter to arbitration under that statutory provision.

3. I declare under penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

Dated this 25th day of May 2018, at Yakima, Washington.

/s/ Vito de la Cruz
Vito de la Cruz, WSBA No. 20797
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES - 16

**Tamaki Law Offices**
1340 N. 16th Ave., Ste. C
Yakima WA 98902
509-248-8338